UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 93-cr-30030-JPG |
| ADRIAN LEVETTE COOPER, | |
| Defendant. | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant Adrian Levette Cooper's amended motion for compassionate release pursuant to the First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018) (codified at 18 U.S.C. § 3582(c)(1)(A)) (Docs. 164 & 165) and its supplements (Docs. 166 & 167). The Government has responded (Doc. 169), and Cooper has replied to that response (Docs. 170, 171, & 172).

**I.    Compassionate Release**

The First Step Act expanded the existing compassionate release provisions of federal law by opening the door for a defendant to move for compassionate release rather than only allowing the Director of the Bureau of Prisons ("BOP") to so move. First Step Act, § 603(b)(1) (codified at 18 U.S.C. § 3582(c)(1)(A)); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The relevant portion of the law provides:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the

>unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>(i) extraordinary and compelling reasons warrant such a reduction. . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . . .

18 U.S.C. § 3582(c)(1)(A).

As for the final clause, there is no applicable Sentencing Commission policy statement regarding motions for compassionate release filed by defendants. *Gunn*, 980 F.3d at 1180. The existing compassionate release policy statement, United States Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13, applies only to motions filed by the BOP, not defendants themselves, "[a]nd because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion." *Id.* Nevertheless, the substantive aspects of U.S.S.G. § 1B1.13 provide a "working definition" of "extraordinary and compelling reasons" that should guide the Court's discretion without strictly confining it. *Id.* A court that "strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id.* Additionally, the Court should give substantial weight to the BOP's analysis regarding "extraordinary and compelling reasons" in any particular case. *Id.*

So the Court looks to U.S.S.G. § 1B1.13 for guidance. That policy statement adds the provision that the defendant not be a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(2).[1] The application notes further define "extraordinary and compelling reasons" to include, as relevant for this case:

**(A)   Medical Condition of the Defendant.—**
   (i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic

---

[1] This provision is similar, but not identical, to 18 U.S.C. § 3553(a)(2)(C), which requires the Court to consider the need for the sentence "to protect the public from further crimes of the defendant."

2

|     |      | lateral sclerosis (ALS), end-stage organ disease, and advanced dementia. |
|-----|------|---|
|     | (ii) | The defendant is— |

           (I)     suffering from a serious physical or medical condition,
           (II)    suffering from a serious functional or cognitive impairment, or
           (III)   experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

\* \* \*

**(D)**    **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n. 1.

Thus, for a defendant to be eligible for compassionate release he must have exhausted his administrative remedies,[2] and the Court must find that (1) extraordinary and compelling reasons for release exist, and (2) considering the applicable factors in 18 U.S.C. § 3553(a), the extraordinary and compelling reasons warrant release. 18 U.S.C. § 3582(c)(1)(A). The defendant bears the burden of making such a showing, and the Court has discretion to determine whether the defendant has satisfied that burden. *United States v. Newton*, No. 20-2893, 2021 WL 1747898, \*2 (7th Cir. May 4, 2021); *Gunn*, 980 F.3d at 1180. The Court uses U.S.S.G. § 1B1.13 cmt. n. 1 to guide its discretion in this regard and should give great weight to the BOP's analysis regarding "extraordinary and compelling reasons," if it has given any such analysis. *Gunn*, 980 F.3d at 1180. The Court now turns to the specifics of the defendant's case.

## II. Analysis

In July 1993, Cooper was found guilty by a jury of conspiracy to possess with intent to distribute more than 500 grams of cocaine. At sentencing, the Court adopted the presentence

---

[2] The exhaustion requirement is not jurisdictional and may be waived by the Government. *Gunn*, 980 F.3d at 1179.

investigation report's relevant conduct finding of 150 to 500 grams of cocaine base. In light of this finding and an information pursuant to 21 U.S.C. § 851, the Court found the defendant was subject to a statutory mandatory life sentence under 21 U.S.C. § 841(b)(1)(A). After the First Step Act retroactively applied modified sentencing ranges for crack cocaine offenses, in 2019 the Court reduced Cooper's sentence to 410 months, longer than the 360 months jointly requested by the parties. In affirming that reduction, the Seventh Circuit Court of Appeals noted the Court's consideration of the relevant factors in 18 U.S.C. § 3553(a) in arriving at the reduction amount:

> [T]he Court highlighted Cooper's background and personal characteristics (alluding to his "attitude problem" at the hearing when he complained that the sentence was not fair), the nature and circumstances of his offense (noting that it was part of a considerable criminal record accrued at a young age), and Cooper's need for rehabilitation (discussing pressures he could face from friends and family to return to criminal behavior).

*United States v. Cooper*, 803 F. App'x 33, 34-35 (7th Cir. Apr. 30, 2020).

Now, having been incarcerated for approximately 28 years, Cooper asks the Court for compassionate release. He argues that, in light of his age (51 years old) and chronic health conditions he has had for at least 20 years, including heart problems and sickle cell trait, the risk posed to him by the COVID-19 pandemic while incarcerated is unacceptably high. He argues that he is not a danger to anyone, as evidenced by the lack of any violent acts in his criminal or disciplinary history and that he can better protect himself and others from disease if he is outside of a prison environment where he can abide by CDC guidelines. He points to his strong family support system, and says he is anxious to get back to his ailing mother who recently underwent heart surgery. He notes the high numbers of diagnosed COVID-19 cases at his institution, the United States Penitentiary at Leavenworth, Kansas ("USP-Leavenworth"), which included Cooper. He contracted COVID-19 in September 2020, had a rough time of it, and was quarantined until early October 2020. He points to this as evidence of his vulnerability to the disease and to getting it

4

again. He admits he has not led a perfect life but claims that, after reflecting over his 28-year incarceration, he is a changed man.

In response, the Government concedes that Cooper has chronic health problems but argues that they do not amount to extraordinary and compelling reasons warranting compassionate release, especially in light of the fact that the BOP is able to provide him appropriate treatment for those conditions in prison. It further points to the Court's July 2019 analysis of the § 3553(a) factors in connection with a reduction under § 404 of the First Step Act and the BOP's designation of Cooper as at high risk for recidivism. It argues that Cooper continues to pose too great a danger to society to release immediately. Finally, the Government argues that the Court has no authority to order the BOP to place Cooper on home confinement during his incarceration.

In reply, Cooper suggests the Court should disregard the Government's response because it was late (it was not, in fact, late), and argues that he is ready for release as evidenced by his designation to a residential reentry center beginning in March 2021 (which apparently did not happen since he is still at USP-Leavenworth today).

It is clear that the defendant has satisfied his obligation to exhaust his administrative remedies before filing his motion. On July 29, 2020, the defendant asked the BOP to move on his behalf for compassionate release, and the defendant placed his motion for compassionate release in the prison mail system on or after September 2, 2020, more than thirty days after he made that request..

As for the defendant's physical condition, the Court does not dispute that he suffers from serious health conditions that may amount to extraordinary and compelling reasons that would support compassionate release. However, even if there were such extraordinary and compelling reasons, they do not warrant Cooper's immediate release in light of the § 3553(a) factors. The Court explored the relevant § 3553(a) factors in 2019 when it decided to reduce his sentence from

5

life to 410 months pursuant to § 404 of the First Step Act, and that analysis continues to apply now. At that point, the Court considered Cooper's background, personal characteristics, his offense of conviction, his criminal record, and his continuing need for rehabilitation. It further noted that Cooper demonstrated an "attitude problem" at the reduction hearing which almost caused the Court to use its discretion to deny a reduction altogether. It was clear to the Court at that time that Cooper did not appreciate the gravity of his offense and needed further punishment and rehabilitation before being released into society again. It therefore decided to give him a reduction that would result in imprisonment for a few more years rather than potential immediate release.

Cooper claims to be a changed man now—one that will not return to his prior criminal activities. He is, of course, anxious to see his ailing mother and the rest of his family, a strong incentive to behave well. However, the Court still has strong reservations about releasing Cooper back into society now because it believes he is not yet equipped to resist his former criminal lifestyle. The Court notes the BOP's assessment of him as at high risk of recidivism. Although the Court is not bound to adopt that assessment, it gives it great weight as an assessment by corrections professionals familiar with Cooper.

Cooper, in fact, returned to breaking rules even before he could be released to a half-way house in March 2021 as planned (Doc. 172). In February 2021, he lost 41 days of good time credit for an infraction involving drugs and/or alcohol.[3] (He had also been found guilty of a disciplinary infraction in May 2020 for possession of a hazardous tool, although it does not appear he lost good time credit for that.) Cooper's expectation of entering a half-way house in March 2021 for his final 12 months of incarceration was derailed, and he remains at the USP-Leavenworth. BOP Inmate

---

[3] The Court became curious when Cooper's release date listed on the BOP's website when he filed his motion was earlier than the release date listed now. *See* https://www.bop.gov/inmateloc/. The Court asked the Probation Office to look into this. Probation discovered and informed the Court of Cooper's loss of good time credit in February 2021.

Locator, https://www.bop.gov/inmateloc/ (visited May 5, 2021).  The Court views this recent disciplinary history as evidence that Cooper does not yet have the will or the skills to resist breaking rules, even when the incentive to do so is high—being out of the prison walls and able to see his family.  Society still needs to be protected from his future crimes, and to release him now, even in light of the danger posed by COVID-19 and his preexisting conditions, would not promote respect for the law.

   The Court acknowledges the grave danger COVID-19 poses to prisoners, who live in close quarters and often cannot practice social distancing.  "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ."  *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  Furthermore, the Court notes that the BOP has been administering COVID-19 vaccines to inmates, *see* BOP, COVID-19 vaccine implementation, https://www.bop.gov/coronavirus/, which will greatly reduce the threat from the disease.  Although it will not order the defendant released at this time, it strongly recommends he be given a high priority in the BOP's vaccination efforts.  In the meantime before Cooper can be vaccinated, he has medical providers available to tend to his health needs, and the BOP continues to take measures to prevent the further spread of the disease within its prison facilities.

   Cooper also asks the Court to order him placed on home confinement.  The Court does not have jurisdiction to entertain such a request.  "After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence."  *United States v. Wilson*, 503 U.S. 329, 335 (1992).  The BOP then has "plenary control" placement of the inmate, subject only to statutory limits.  *Tapia v. United States*, 564 U.S. 319, 331 (2011); *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021).  This includes the decision whether to house an inmate in a prison or in home confinement, 18 U.S.C. § 3624(c)(2), and the Court has no

7

jurisdiction to review that decision, 18 U.S.C. § 3621(b) ("Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court."). *Saunders*, 986 F.3d at 1078 (noting that a court lacks authority to change an inmate's place of imprisonment, although it may recommend a different placement). The defendant may seek relief from the BOP by filing an administrative remedy, but the Court cannot help him.

### III. Conclusion

For all of these reasons, the Court **DENIES** Cooper's motion for compassionate release and its supplements (Docs. 164-67 & 170-72) but **STRONGLY RECOMMENDS** the BOP give him high priority for the COVID-19 vaccine if it has not already done so. In light of this ruling, the defendant's motion for status is **DENIED as moot** (Doc. 174).

**IT IS SO ORDERED.**
**DATED: May 7, 2021**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
